**In re Barbara D. DANIEL, Debtor.**

**No. 00–33785–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Feb. 27, 2001.

Philip C. Baxa, Andrea M. Sullivan, Troutman Saunders, L.L.P., Richmond, for William and Louise Thomas.

Robert A. Canfield, Richmond, for Debtor.

Robert E. Hyman, Richmond, Chapter 13 Trustee.

### MEMORANDUM OPINION (AMENDED)

DOUGLAS O. TICE, Jr., Chief Judge.

William A. and Louise A. Thomas object to confirmation of debtor's chapter 13 plan filed July 21, 2000. Following an evidentiary hearing, the parties have subsequently submitted briefs.

For reasons stated below, the court will sustain the objection and deny confirmation.

### Findings of Fact.

Mr. and Mrs. Thomas obtained judgment against debtor in the Circuit Court of Goochland County, Virginia, on June 16, 2000. The principal amount of the judgment was $55,000.00 plus costs in the amount of $715.90 and interest at the rate of nine percent per annum. The Thomases hold an unsecured claim against debtor for the judgment amount.

Debtor, who is married and lives with her husband and son, filed an individual chapter 13 petition on July 6, 2000. Schedule F of her petition lists total individual unsecured debt of $66,851.00, including the $55,000.00 judgment; schedule E lists federal and state income taxes jointly owed with her husband in the total amount of $19,514.17.

Debtor's schedule of income and expenses (monthly budget) states that she has monthly income of $1,792.23; additionally her income for plan purposes includes a monthly payment of $3,000.00 from her husband. Debtor's projected monthly expenses total $4,200.00; this figure includes the following: $133.00 for a vacation time share in Powhatan Plantation located in Williamsburg and jointly-owned with debtor's husband; $250.00 for private school tuition for her eleven year-old son; and $130.00 for "recreation, clubs, and entertainment, newspapers and magazines, etc." This last item includes a monthly payment for country club dues of debtor and her husband.

Debtor's chapter 13 plan provides that she will pay to the trustee $550.00 per month for sixty months, a total of $33,000.00. The plan proposes to pay, among other items, the joint income tax liability of debtor and her husband and

12% of the unsecured claims. Based upon the proofs of claims filed by the Internal Revenue Service and the Virginia Department of Taxation, the plan will pay 100% of joint priority tax debt in the total amount of $19,800.00. The plan also provides for direct payment to creditors of joint secured debt of debtor and her husband consisting of a home mortgage and an automobile loan.

## Position of Parties.

### Creditor–Plaintiff.

The Thomases object to confirmation on the basis that debtor's plan was not proposed in good faith as required by Bankruptcy Code § 1325(a)(3) because (1) debtor filed her bankruptcy petition just three weeks after entry of the state court judgment, yet the plan provides for only a 12% payment to unsecured creditors; (2) the amount of the judgment is the most significant portion of debtor's unsecured debt; (3) the plan states that the debt to the Thomases is "disputed" even though a final judgment has been entered, and no appeal has been filed; (4) the judgment debt to the Thomases would be nondischargeable under Code § 523(a)(6) in a case under chapter 7 of the Code because it was a "willful and malicious" injury; (5) the debtor's expenditures are excessive and unreasonable, including membership in a country club, payment for a vacation time share in Williamsburg, and private school tuition for her child; (6) debtor's monthly payments for the time share are payments for property jointly-owned by her spouse who is not in bankruptcy; and (7) the plan does not include all income of debtor's husband.

### Debtor–Defendant.

Debtor asserts that the plan was filed in good faith. Although the monthly expenses include luxury items, these expenses are joint expenses of debtor and her non-debtor husband.

## Discussion and Conclusions of Law.

### I. State Court Judgment Against Debtor.

Debtor filed this chapter 13 case on July 6, 2000, approximately three weeks after a judgment of $55,000.00 was entered against her. The plaintiffs in that lawsuit, the Thomases, object to confirmation of debtor's plan, which proposes to pay 12% of debtor's unsecured debt over five years. The Thomases assert that this judgment would be excepted from debtor's discharge in a chapter 7 case as a willful and malicious injury under Code § 523(a)(6). According to the Thomases' proof of claim filed in the case, the judgment was "based on tortious interference with prospective contract." At hearing, the court heard brief testimony from debtor tending to support this description although not in the same vein asserted by counsel for the Thomases. Of course, this evidence does not establish that the judgment would be excepted from discharge in a chapter 7. However, there is a sufficient basis for the court to consider the nature of the judgment in a good faith analysis of debtor's plan.

### II. Debtor's Burden of Proof.

 The debtor has the burden of proof of establishing that the plan is filed in good faith,[1] as required by Code

1. The term "good faith" is not defined in the Bankruptcy Code, nor legislative history. Courts have held that there is no precise or comprehensive definition for the concept. See Nelson v. Easley (In re Easley), 72 B.R. 948, 950 (Bankr.M.D.Tenn.1987). Rather, "good faith" is "an amorphous notion, largely defined by factual inquiry." Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah), 836 F.2d 1030, 1033 (6th Cir.1988). The inquiry must be performed on a case-by-case basis, it must be fact sensitive, and

§ 1325(a)(3). *See In re Harrison,* 203 B.R. 253, 255 (Bankr.E.D.Va.1996); *In re Belt,* 106 B.R. 553, 564 (Bankr.N.D.Ind. 1989). The burden is on the chapter 13 debtor to establish her own good faith in the filing of a debt adjustment plan, once that good faith has been questioned by means of an objection by a creditor, trustee, or the court. *See In re Belt,* 106 B.R. at 564; *Fidelity & Casualty Co. v. Warren (In re Warren),* 89 B.R. 87, 93 (9th Cir. BAP 1988).

### III. *Requirement of Good Faith Showing.*

■ In the context of preparing chapter 13 schedules, honesty and full disclosure are the hallmarks of a good faith showing on the part of debtor. *See In re Carter,* 205 B.R. 733, 736 (Bankr.E.D.Pa. 1996), *citing In re March,* 83 B.R. 270, 275 (Bankr.E.D.Pa.1988). The court has set out above the points which the Thomases argue support a finding of bad faith. Other factors which bear on the issue are that debtor's individual plan proposes to pay joint income taxes of herself and her husband, as well the direct payment of a joint mortgage and joint automobile loan. All of these points persuade the court that debtor's plan was filed in bad faith and cannot be confirmed.

### IV. *"Totality of the Circumstances" Test.*

■ Debtor's plan also fails the Fourth Circuit's totality of the circumstances test[2] used for making determinations of bad faith on the part of a chapter 13 debtor whose plan proposes to pay out unsecured debts at a low percentage[3] when the debt might be excepted from discharge. *See In re Martin,* 189 B.R. 619, 621–22 (Bankr.E.D.Va.1995) (describing that "good faith" requirements are fairly elastic and depend on "... facts and circumstances of the ... case and the discretion of the court");[4] *In re Oliver,* 186 B.R. 403, 405 (Bankr.E.D.Va.1995) (citation omitted); *Neufeld v. Freeman,* 794 F.2d 149, 152 (4th Cir.1986) (citing the totality of the circumstances test is used to determine if a plan "violates the purpose or spirit of chapter 13" and "nondischarge-

should focus on whether debtor's plan abuses the provisions, purpose, and spirit of chapter 13. *See Ravenot v. Rimgale (In re Rimgale),* 669 F.2d 426, 431 (7th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982).

2. The Fourth Circuit has expressly rejected any attempt to designate a *per se* rule of requiring substantial repayment in order to prove good faith on the part of debtor proposing a chapter 13 plan. *See Deans v. O'Donnell,* 692 F.2d at 972 (detailing the plain language of § 1325(a)(3) precludes importation of a *per se* rule requiring substantial repayment of unsecured claims into the good faith requirement of every plan, and that if Congress had wanted to make substantial repayment a condition precedent to confirmation, it would have explicitly done so and there would be mention of the percentage or amount each plan must offer to unsecured creditors, rather than a comparative liquidation analysis).

3. A small payout to general unsecured creditors can provide indicia of a chapter 13 debtor's "unfair manipulation" of the bankruptcy code and its fundamental principles. *See In re Wilcox,* 251 B.R. 59, 68 (Bankr.E.D.Ark. 2000).

4. The bankruptcy court has discretion to determine whether a plan embraces a satisfactory repayment effort and is in the best position to make good faith assessments of any reorganization proposals. *See In re Jasik,* 727 F.2d 1379, 1383 (5th Cir.1984); *Public Fin. Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir.1983). In examining all factors and weighing all circumstances, the court " ... must be mindful of the fresh-start purposes of the Code" but " ... must be wary of attempts by debtors to abuse the Code's remedies." *In re McLaughlin,* 217 B.R. 772, 776 (Bankr.W.D.Tex.1998).

ability under chapter 7 of certain claims [is] also [a] factor[ ] in evaluating ... good faith").

■■■ When bad faith allegations are made by an unsecured creditor objecting to confirmation, the court must scrutinize debtor's plan, its treatment of unsecured debt and the percentage payout that might be excepted from discharge. *See* § 1325(a)(3). However, a plan that proposes a low percentage payout to unsecured creditors is not, by itself, sufficient justification for a finding of bad faith. *See In re Chaffin,* 816 F.2d 1070 (5th Cir.1987), *reh'g,* 836 F.2d 215 (1988).

Here, it is highly significant that debtor's plan proposes to pay 100% of joint tax debt of over $19,000.00 even though debtor's husband's total income is not included in plan.

## V. *"Disposable Income" Test.*

■■■ Additionally, debtor's plan fails to meet the disposable income test of § 1325(b) because it does not include all income of her non-debtor husband and because it proposes to pay nonessential luxury items.

### A. *Requirement of Scheduling Non-debtor Spouse Income.*

Debtor's plan fails to include all income of her husband. This is in violation of this court's official bankruptcy forms, which require chapter 13 debtors to report their income and expenses as well as that of non-debtor spouses. *See* Fed. R. Bankr.

Proc. 1007(b)(1); Official Forms, E.D. Va., No. 6, Schedules I & J.

■■■ The rationale[5] behind including non-debtor income in debtor's individual plan under the disposable income test is simple: a portion of non-debtor spouse's income is likely to be applied to the basic needs of debtor and to potentially increase the share of debtor's own income that is not reasonably necessary for support. *See In re Carter,* 205 B.R. at 736.

The requirement to report a non-debtor spouse's income finds strong support in the case law. Courts have held that non-debtor spouse income must be considered in making determinations of whether debtor's individual plan satisfies the disposable income test, and spousal income must be scheduled and fully disclosed in debtor's individual plan.[6] *See, e.g., In re Belt,* 106 B.R. at 561–62 (holding that the disposable income test must include the income and expenses of non-debtor spouse); *see also In re Bottelberghe,* 253 B.R. 256, 260 (Bankr.D.Minn.2000), *citing In re Hanlin,* 211 B.R. 147, 148 (Bankr.W.D.N.Y.1997)(stating that " ... non[-]debtor spouse's income and expenses are reviewable by virtue of official bankruptcy scheduling requirements"); *In re Carter,* 205 B.R. at 735 (citing that when married debtors file individually, courts base their calculation of disposable income on debtor's *family* budget that includes income and expenses of non-debtor spouse).

---

5. The debtor is part of a family unit and the totality of the family's income and expenses is considered in a calculation under the "disposable income" test for purposes of § 1325(b)(2), as well as the good faith requirement under § 1325(a)(3).

6. While "[n]o statutory authority requires the ... court to consider the income of a non-debtor spouse in computing disposable in-

come, ... courts have held that an accurate application of chapter 13's disposable income test [under] ... § 1328(b) is not possible without including ... income from all sources including a non-debtor spouse." *Id.* at 561, *citing In re Strong,* 84 B.R. 541, 543 (Bankr. N.D.Ind.1988); *In re Saunders,* 60 B.R. 187, 188 (Bankr.N.D.Ohio 1986).

## B. *Continuing Payment of Luxury Items.*

Debtor's plan budget provides for the payment of nonessential luxury items, e.g., a vacation time share, private school tuition for her son and country club dues.

 Debtors do not have an entitlement, at the expense of their creditors, to maintain their prepetition lifestyles and status in society, especially when their prior lifestyles " ... were characterized by luxury, excessive consumption of nonessentials, or inordinately high expenditures for purchases of necessities." *In re Bottelberghe,* 253 B.R. at 263 (citations omitted). In fact, the determination of what is deemed a "reasonably necessary" expense under the disposable income test does not even consider debtor's former prepetition lifestyle. *See In re McNichols,* 249 B.R. 160, 168 (Bankr.N.D.Ill.2000), *citing In re Jones,* 55 B.R. 462, 464 (Bankr.D.Minn. 1985).

In short, debtor's proposed continuing payment of these luxury items defeats confirmation of her plan. *See In re Bottelberghe,* 253 B.R. at 256; *In re Kasun,* 186 B.R. 62, 63–64 (Bankr.E.D.Va.1995); *In re Webster,* 165 B.R. 173, 176 (Bankr.E.D.Va. 1994).

## V. *Conclusion.*

To summarize, debtor's plan was not filed in good faith because (1) debtor filed her bankruptcy case within a few weeks after the state court judgment was entered against her; (2) debtor's husband's full income is not included in the plan budget, yet debtor proposes to pay their joint debt along with a low percentage of payment to her individual unsecured creditors; and (3) debtor's budget contains items which maintain her comfortable prepetition lifestyle.

There can be little doubt that debtor filed bankruptcy for the sole purpose of avoiding a substantial payment of the $55,000.00 state court judgment. Because the court finds that debtor has not proposed this plan in good faith and because the plan fails to pass the disposable income test, the court will sustain the objection of Mr. and Mrs. Thomas and deny confirmation.

A separate order will be entered.