**In re Kevin A. WILLIAMS,**
**Sr. Chapter 13 Debtor.**

**No. 03–36145–DOT.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 7, 2004.

Darryl A. Parker, Richmond, VA, for Debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Chief Judge.

Hearing was held May 5, 2004, on objection to confirmation of the chapter 13 plan of debtor Kevin Williams. The objection was filed by secured creditors Macel R. Morris, Jr., Norman G. Powell, and Velda E. Chatnick. Debtor's objection to the claim of these creditors was resolved by agreement of the parties. There is also pending the creditors' motion for relief from the automatic stay filed July 18, 2003; the court previously continued the stay in effect pending resolution of the objection to confirmation.

The issues raised by the creditors' objection to debtor's plan revolve around their first deed of trust lien on real property located at 5301 Old Midlothian Turnpike in the City of Richmond. At the conclusion of hearing the court reserved ruling on the objection and allowed the parties 15 days to submit additional argument by brief. Subsequently, the creditors filed briefs opposing confirmation and requesting relief from the automatic stay.

For reasons stated below, the court finds that the chapter 13 plan does not comply with the good faith standard for confirmation required by the Bankruptcy Code. Therefore, confirmation of debtor's plan must be denied. Additionally, the court will grant the creditors' motion for relief from stay.

### Facts.

Debtor is minister of the Restoration Christian Fellowship Church and also a trustee of the church, appointed pursuant to Virginia law. The church was formerly located in a building located at 5301 Old Midlothian Turnpike in Richmond. This real property had been purchased by the trustees of the church under a deed dated February 1, 1994, and recorded in the Circuit Court of the City of Richmond on February 2, 1994. The grantors in the deed were Norman G. Powell and Sadie S. Powell, his wife, Velda E. Chatnick, widow, and Elsie I. Morris, widow, and they conveyed the property to the following grantees:

Kevin A. Williams, Sr., Aaron Porter, Michele R. Williams, Alma S. Crosby and William A. Dixon, Trustees of Restoration Christian Fellowship Church, hereinafter designated "Grantee."

The purchase was financed at least in part by the sellers. Concurrently with the purchase, Restoration Christian Fellowship Church by its trustees (grantees above) executed a promissory note dated February 1, 1994, payable to Velda E. Chatnick, Elsie I. Morris, and Norman G. Powell. Also appended to the note, which was in the amount of $160,000.00, was a personal guaranty signed by the trustees. The promissory note was secured by the church trustees' deed of trust of the same date covering the subject realty. The deed of trust was recorded in Richmond Circuit Court on February 2, 1994, just after the deed.

The promissory note provided for interest at the rate of 8% with payments in the amount of $1,941.24 per month plus payments of $3,000.00 every six months. The note matured on August 15, 2001. No payments have been made on the note since maturity.

Restoration Christian Fellowship Church occupied the building located on the subject realty from the time of the purchase until around September or October of 2002 when the church building was

condemned by the City of Richmond due to zoning issues and defective wiring.

Debtor filed this chapter 13 bankruptcy case on June 23, 2003, primarily to prevent foreclosure of the property by the note-holders. None of the other church trustees who guaranteed the note have filed bankruptcy. On July 18, 2003, the holders of the note secured by the church property filed a motion for relief from stay and from the co-debtor stay. A continued final hearing on the relief from stay motion was held October 1, 2003, at the conclusion of which the court ruled that the automatic stay would continue in effect pending resolution of the noteholders' objection to confirmation of debtor's chapter 13 plan. However, the court granted relief from stay with respect to the co-debtors on the note, the other church trustees.

Debtor's bankruptcy schedules failed to list a number of items of personal property of unknown value. These schedules also reflect that debtor owns the church real property in fee simple.

Additional facts are stated in the Discussion section of this opinion.

### Debtor's Proposed Plan.

Debtor filed his second modified chapter 13 plan on January 8, 2004. The plan states that debtor has total assets of $219,850.00, total unsecured debt of $108,390.57, and total secured debt of $350,676.86. In summary, the plan provides as follows:

1) Monthly payments to the trustee of $2,649.23 for five months; thereafter $2661.00 for 55 months; total payments of $166,652.70.

2) Ten percent dividend to unsecured claims.

3) Payment through the trustee of pre-petition delinquency on the first deed of trust against debtor's residence; regular payments on the first deed of trust and a second deed of trust to be paid directly by debtor.

4) Payment through the trustee of the noteholder creditors' claim by payments of $1,777.56 per month for 60 months. (Plan states that the value of the realty located at 5301 Old Midlothian Turnpike is $210,100.00 and that the secured claim of the noteholders against the realty is $106,653.78.)

5) Payment through the trustee of delinquent City of Richmond real estate taxes at 5301 Old Midlothian Turnpike in the amount of $40,450.32.

### Objection to Confirmation.

The noteholder creditors, on January 22, 2004, filed an objection to confirmation of the debtor's plan of January 8. Their objection asserts that the plan is not proposed in good faith as required by Bankruptcy Code § 1325(a)(5)(A) based in summary upon the following:

1) The debtor holds mere legal title to the subject realty pursuant to Code of Virginia § 57–8. The beneficial owner of the property is Restoration Christian Fellowship Church. Consequently, pursuant to Bankruptcy Code §§ 1306 and 541(b), the property is not property of the bankruptcy estate.

2) Debtor's bankruptcy schedules erroneously state that debtor holds a fee simple interest in the property. In fact, debtor's interest is held exclusively for the use and benefit of the church. The church is the primary obligor and maker of the note. However, debtor proposes in his plan for

the chapter 13 trustee to pay the promissory note (in part only) along with delinquent real estate taxes on the property.

3) Debtor proposes to pay the debts of another for the purpose of reducing or removing liens from the property to the detriment of unsecured creditors. The plan proposes to pay unsecured creditors just 10% of their claims.

4) Debtor's schedules fail to disclose all of his property.

5) The plan does not comply with provisions of Bankruptcy Code §§ 1322 and 1325. Debtor does not propose to pay the noteholders in accordance with their claim because the plan misstates the amount due under the note.

### Discussion and Conclusions of Law.

■ The debtor has the burden to prove that his plan was filed in good faith, as required by § 1325(a)(3). *In re Harrison*, 203 B.R. 253, 255 (Bankr.E.D.Va. 1996). Good faith, which is not defined in the Bankruptcy Code, is a necessary requirement to "prevent abuse of the provisions, purpose, or spirit of Chapter 13." *Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1134 (4th Cir.1995) (citing *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir.1986)); 8 COLLIER ON BANKRUPTCY ¶ 1325.04 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2004). Under the case law, good faith has become an elastic concept that depends on the facts and circumstances of each case and the discretion of the court. *In re Daniel*, 260

B.R. 763 (Bankr.E.D.Va.2001); *In re Martin*, 189 B.R. 619 (Bankr.E.D.Va.1995). In the Fourth Circuit, the good faith analysis is made under a "totality of circumstances" test. *Neufeld*, 794 F.2d at 152; *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982).[1]

■ In the context of preparing chapter 13 schedules, honesty and full disclosure are the hallmarks of a good faith showing on the part of debtor. *In re Carter*, 205 B.R. 733, 736 (Bankr.E.D.Pa.1996).

■ In this case the noteholders' good faith objection to confirmation raises unusual issues. Debtor as a church trustee along with other trustees caused the church to purchase real property for use as a church. The trustees all signed personal guaranties of the secured purchase money promissory note taken back by the sellers of the property. The note has now matured and is seriously delinquent. Debtor alone of all the church trustees has filed a chapter 13 case and effectively proposes in his plan to treat the church real property as his individual property and to pay off the deed of trust note over a period of 60 months.

The objection to confirmation is based in part upon Virginia church law and real property law. The noteholders assert that the church, not the debtor, owns the realty and that it is not proper for debtor to use the provisions of chapter 13 to pay the church's debt. Moreover, the noteholders oppose the plan because debtor proposes to pay 100% of the debt, which is owed by

---

**1.** Totality of circumstances includes the following factors: (1) the percentage of the proposed repayment; (2) debtor's financial situation; (3) the period of time over which payment will be made; (4) debtor's employment history and prospects; (5) the nature and amount of unsecured claims; (6) debtor's past bankruptcy filings; (7) debtor's honesty in representing facts; and (8) any unusual or exceptional problems facing the particular debtor. *Deans*, 692 F.2d at 972.

the church, while paying only 10% of his unsecured claims.[2] At hearing the noteholders' counsel argued that the other trustees, who are also liable under their guaranties of the note, should be contributing to the plan.

The court concludes that the noteholders' objections have merit, and the plan cannot be confirmed. While debtor's goal to save his church's property is admirable, his plan contravenes the good faith requirement for confirmation.

■ There seems to be no question that debtor's interest in the church property is held exclusively for the use and benefit of the church and that the church through its trustees is the owner of the property and the maker and obligor under the promissory note. Va.Code Ann. (1950), § 57–8; *see Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc.*, 249 Va. 144, 452 S.E.2d 847 (1995); *Globe Furniture Co. v. Trustees of Jerusalem Baptist Church*, 103 Va. 559, 49 S.E. 657 (1905). Debtor's schedules state that he holds a fee simple interest in the property. This is erroneous because under Virginia law he holds bare legal title. Pursuant to Bankruptcy Code § 541(b)(1) this type of interest is not an asset of debtor's bankruptcy estate.

Debtor's position that the plan is confirmable is based upon his testimony that he put up $12,000.00 of his own money toward the purchase, that this interest is an asset of the estate, and that he is fully liable on the note as a guarantor. However, with respect to these assertions, the court notes that debtor has produced no evidence, even in his testimony, as to any agreement he had with the other church trustees concerning the $12,000.00. It might well have been a contribution to the church, for which he did not expect an interest in the property. In any event, debtor has not proven that he has a legal or equitable interest in the realty.

■ The noteholders have filed a secured proof of claim in the case, and debtor's plan treats their claim as secured. However, the court's findings regarding debtor's lack of a beneficial interest in the property lead to the conclusion that the noteholders' claim is not a secured claim in the case as it is not secured by property of the estate. *See* 11 U.S.C. § 506(a); 4 Collier on Bankruptcy ¶ 506.03. Of course, they do have an unsecured claim under debtor's guaranty of the promissory note.

Notwithstanding the technicalities of property ownership, in the court's view of the confirmation issues raised it does not really matter whether debtor has any interest in the property or whether the noteholders hold a secured or unsecured claim. The plan cannot be approved because it proposes to pay debt of other co-debtors (trustees) who are contributing nothing. This is prejudicial to the claims of unsecured creditors who are to receive only a 10% dividend.[3] This ruling is consistent with my ruling in a previous case that a

**2.** One of the noteholders' objections is that the plan incorrectly states the amount of their debt and thus does not propose to pay the full debt. The court assumes that debtor would amend the plan to provide the correct amount if the plan is otherwise approved.

**3.** If the noteholders are unsecured, the reality of debtor's plan is that he is contributing the monthly amount provided by the plan to the church. Of course, such a plan could not be approved either. Likewise, if debtor proposed to pay the noteholders' claim as a separate unsecured class, the plan could not be approved because it would discriminate unfairly against the other class of unsecured

plan proposing to pay a significant indebtedness shared by a debtor with a non-contributing co-debtor is not filed in good faith. *See In re Daniel*, 260 B.R. at 768.

Another confirmation issue not raised by the noteholders is whether the plan is feasible, a requirement of § 1325(a)(6). There is little evidence concerning debtor's ability to fund the plan other than his testimony that he had made all payments up to the date of the last hearing. It is not clear why debtor is now able to meet the church's obligation to pay the deed of trust note and his own home deed of trust after both obligations were delinquent before he filed bankruptcy. In spite of these reservations, the court makes no ruling on the issue of feasibility.

In accordance with the court's previous analysis, an order will be entered denying confirmation of the plan. Under the court's local rules, debtor will have a period of 20 days to file a modified plan. However, because debtor may not treat the claim of the noteholders in his chapter 13 plan, the court will also enter an order granting the creditors' pending motion for relief from the automatic stay.

claims being paid at 10%. *See* 11 U.S.C. § 1322(b)(1).